AO-106 (Rev. 06/09)-Application for Search Warrant



# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of | ) |
| *12790 South 4230 Road, Chelsea, Oklahoma 74016 also* | ) |
| *identified by Parcel Identification Number: 23N17E-34-4-* | ) |
| *00000-000-0000, Rogers County Account Number:* | ) |
| *660029785* | ) |

Case No. 23MJ-250-JFJ

**FILED UNDER SEAL**

**FILED**
APR 1 8 2023
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **21 U.S.C. §§ 846 and 841(b)(1)(A)(viii)** | **Drug Conspiracy** |

The application is based on these facts:
**See Affidavit of SA Alan Frank, DEA, attached hereto**.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Alan Frank*

*Applicant's signature*

SA Alan Frank, DEA

*Printed name and title*

Subscribed and sworn to by phone.

Date: 4/18/23

*Judge's signature*

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of 12790 South 4230 Road, Chelsea, Oklahoma 74016 also identified by Parcel Identification Number: 23N17E-34-4-00000-000-0000, Rogers County Account Number: 660029785 | Case No. _____<br><br>**FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Special Agent Alan Frank, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search 12790 South 4230 Road, Rogers County, Northern District of Oklahoma, as further described in Attachment A, for the things described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I am a Special Agent with Drug Enforcement Administration, United States Department of Justice, and as such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), and Title 21, United States Code, Section 878(a), that is, an officer of the United States who is

empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Titles 18 and 21 of the United States Code. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a DEA Special Agent since May 2021. I am currently assigned to the Tulsa Resident Office (TRO), in Tulsa, Oklahoma, and I am an "investigative or law enforcement officer" of the United States as defined in Title 21 U.S.C § 878(a). I was previously employed with the St. Louis County Police Department. I worked for St. Louis County Police Department for approximately 6 years, and during that time I was assigned to a Federal Bureau of Investigation (FBI) Violent Gang Safe Streets Task Force as a Special Federal Officer (SFO), where I investigated drug and weapons violation under United States Title 18 and Title 21. I have received numerous hours in specialized training from various federal and local law enforcement agencies. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience. During the course of my training and

interviews with various defendants I have learned how individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I have learned how individuals who are involved in the distribution of controlled dangerous substances maintain records and secret monies derived from the sale of illegal drugs. I have learned of the distribution schemes utilized by individuals involved in Drug Trafficking Organizations (DTOs).

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 21, United States Code, Section 846 and 841(b)(1)(A)(viii) – Drug Conspiracy will be located at 12790 South 4230 Road, Rogers County, Northern District of Oklahoma, as further described in Attachment A.

3

## Jurisdiction

6. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

7. The requested search is related to the following violations of federal law:

> a) knowingly, intentionally, and willfully conspired, confederated, and agreed, together with others known and unknown to the Grand Jury, to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846 and 841(B)(1)(A)(viii).

8. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Drug Offenses Background

9. During the course of my training and experience, I have learned how individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I have learned how individuals who are involved in the distribution of controlled dangerous substances maintain records and secret monies derived from the sale of illegal drugs.

10. I also know, based on my training and experience, that drug traffickers frequently conduct counter surveillance maneuvers after departing from meetings

4

with other members of their drug trafficking organizations ("DTO") in order to deter

law enforcement detection.

11. Based on my background, training, and experience, as previously detailed in

this affidavit, I know:

    a.   Drug traffickers often place assets in names other than their own to avoid

        detection of these assets by law enforcement. In addition, drug traffickers

        often use a variety of vehicles, vehicles in the names of others and rental

        vehicles to prevent detection and identification by law enforcement and to

        prevent forfeiture of the vehicles;

    b.  Even though these assets are in the names of other people, the drug

        traffickers continue to use these assets and exercise dominion and control

        over them;

    c.  Drug traffickers must maintain a large amount of U.S. currency in order to

        finance their ongoing drug activities;

    d.  Drug traffickers maintain books, computer data and programs, records,

        receipts, notes, ledgers, airline tickets, money orders, cashier's checks,

        records of wire transfers, records of purchase of vehicles and property and

        other papers relating to the importation, ordering, sale, transportation,

        possession, purchase and transfer of controlled substances;

    e.  Drug traffickers often keep records that are usually recorded in units of

        weight and monetary value, associated with pounds and kilograms or other

        such units of measurement and dollar amounts to assist them in their

business, records to keep track of amounts "fronted" to customers and money owed by customers for amounts "fronted" by the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained where drug traffickers have ready access to them, i.e., on their persons, in their vehicles, in or about their residences and places of business. These documents are often kept in code to secret their meaning from law enforcement;

f.  It is common for drug traffickers to hide contraband, proceeds of drug sales, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions, records and evidence of drug transactions relating to transferring, hiding or spending large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, within or around their residences and businesses for ready access or to conceal them from law enforcement authorities;

g.  When drug traffickers collect proceeds from the sale of drugs, they attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize some, if not all, of the following means; foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations and business frauds;

h. Drug traffickers commonly maintain names, addresses and telephone numbers in books or papers for their associates in the trafficking organization. These books or papers include such items as address books, telephone messages, etc. Shorthand and/or code names are sometimes used for buyers, co-conspirators, sellers, weights and other details of the drug traffickers;

i. Drug traffickers hide and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences and the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that courts have recognized that unexplained wealth is derived from crimes motivated by greed, in particular, drug trafficking;

j. The books, records, receipts, notes, ledgers, and other items mentioned above are commonly maintained where the drug traffickers have ready access to them and are maintained for long periods of time after the actual event reflected in the documents;

k. Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their products. These traffickers usually maintain these photographs in their possession, as in their cellular telephones, iPads, or other portable electronic devices;

7

l. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs. This paraphernalia includes, but is not limited to, scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m. Drug traffickers frequently package illegal narcotics in vacuum sealed bags. Vacuum sealed bags help mask the smell of illegal narcotics, which assists drug traffickers with deterring law enforcement detection. Additionally, mid-level distributors frequently repackage the illegal narcotics they receive from their source of supply ("SOS") into smaller quantities.

n. Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement and, in so doing, acquire property, services and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names, and they maintain such documents in evidence of their false identities in their residences (including outbuildings), businesses and automobiles together with evidence of their true identities;

o. Drug traffickers commonly conduct a significant amount of their business by using cellular telephones and other telephone systems and normally make frequent calls to conduct, direct, supervise and coordinate their activities.

p. Persons engaged in drug trafficking often photograph themselves and others with controlled substances and money proceeds. Such photographs

are often kept in digital form on cell phones. Individuals involved in drug trafficking also trade images of firearms and/or other items used in or derived from their illegal activity on their cell phones;

q.  Those involved in domestic or international drug trafficking rely heavily on telephones to communicate with one another in order to coordinate the smuggling, transportation, and distribution of illegal drugs, and they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications;

r.  Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles; and

s.  Individuals involved in illegal activities like drug trafficking often generate large amounts of cash from their illegal activities. In order to conceal profits from illegal activities, these individuals employ various types of financial transactions to disguise and conceal profits. Individuals involved in criminal activities may utilize the facade of a legal enterprise that can be represented as the source of funds arising out of the criminal activity. Individuals involved in illegal activity often physically conceal their funds in locations such as residences, safe deposit boxes, safes or other locations where assets can be physically concealed. Illegal proceeds or assets may also be hidden by placing the assets in third party names including personal property, real property or financial institutions.

9

## Probable Cause

12. On or about January of 2022, members of the DEA Tulsa Resident Office (TRO) began an investigation into a Mexico-based Drug Trafficking Organization (DTO). The DTO was trafficking large quantities of methamphetamine and fentanyl to the Northern District of Oklahoma.

13. On or about April of 2022, based on a tip from another DEA office, members of the TRO, as well as members of the United States Postal Inspectors Office, identified 1918 East Marshall Place, Tulsa, Oklahoma as receiving suspicious parcels via the United States Postal Service.

14. On or about May 2, 2022, US Postal Office of Inspector General (USPS/OIG) SA Micah Maulden contacted SA Alan Frank and SA Taylor Wilson and advised that a parcel was en route to 1918 East Marshall Place, Tulsa, Oklahoma. Inspectors identified the parcel as a cardboard box with a handwritten label. The package was from "6881 Azalea Avenue, Bakersfield, CA, 93306." There was no name for the return on the parcel. The parcel was addressed to "Manuel Zomudio" at 1918 East Marshall Place, Tulsa, Oklahoma.

15. On or about May 4, 2022, U.S. Magistrate Judge Susan E. Huntsman, signed a warrant for the seized parcel as well as, an anticipatory search warrant for a residence located at 1918 East Marshall Place, Tulsa, Oklahoma which is the address where the parcel was to be delivered. The premises search warrant was conditioned upon successful receipt of the parcel by someone at the residence and their subsequent possession of the parcel inside the residence.

16. At approximately 2:00 p.m., investigators conducted a search of the parcel. Investigators found multiple plastic bags containing a crystal-like substance, believed to be suspected methamphetamine.

17. At approximately 4:12 p.m., members of the TRO responded to 1918 East Marshall Place to execute the search warrant (detailed in paragraph 16) signed earlier that day by U.S. Magistrate Judge Susan E. Huntsman.

18. A search of the residence revealed the following evidential items to include but not exclude the following: plastic bags containing a crystal like substance (located in an apron in the east bedroom), Plastic bag containing blue pills marked "M 30" (located in an apron in the east bedroom), iPhone in a black and orange case (located in the living room), and a iPhone in a wallet case (located in the living room).

19. While on scene two subjects were detained and read their Miranda Rights per a DEA-13 Miranda Rights Card. Both subjects advised they understood their Miranda Rights and in post Miranda Statements signed a DEA consent to search form reference to their cellular devices listed in paragraph 18.

20. On July 21, 2022, members of the DEA TRO obtained a copy of the contents of the aforementioned telephones. Through analysis on the telephones investigators identified a Mexican based Source of Supply (SOS) to be Samuel Ulises Ortega, who utilized telephone number 52-3317610597 (target account) to communicate with the aforementioned subjects.

21. While investigating the DTO, members of the TRO obtained a tip regarding **Joseph Anthony Raniewicz**. Investigators were advised **Raniewicz** was receiving

11

methamphetamine from a Mexico-based Source of Supply and distributing the methamphetamine within the Norther District of Oklahoma.

22. Investigators identified an associate of **Raniewicz**, potentially his child's mother, was Brittany Welch. Through financial records investigators identified that Welch was wiring money to Ortega in Mexico. A subpoena to Western Union revealed in 2021 Welch wired approximately $13,584 to Ortega through approximately 26 wire transactions. In 2022, investigators also observed Welch wired approximately $1,900 to Ortega through approximately 3 wire transactions.

23. On or around October 29, 2023, the Tonto Apache Police Department (TAPD) stopped a 2022 Honda Accord bearing Florida tag 37B-TDQ. TAPD identified the driver of vehicle to be **Raniewicz**, and upon a search of the vehicle located approximately 14 pounds of methamphetamine in the trunk of the vehicle. TAPD located inside the vehicle 1 fentanyl pill with the marking of "M-30" on it. TAPD also located a rental agreement which identified the vehicle was rented by Welch in Tulsa, within the NDOK, on October 25, 2022.

24. During TAPD's investigation, a cellular device was seized from **Raniewicz**. During TAPD's investigation **Raniewicz** admitted to deleting historical data from the cellular device to conceal law enforcement from accessing the information. Members of the TRO obtained authorization to search the device through the Northern District of Oklahoma, however due to the encryption on the device

members of the DTO were unable to obtain/recover any data from the cellular device.

25. Investigators served a subpoena to the car rental company which revealed the vehicle was rented by Welch on October 25, 2022 in Tulsa, Oklahoma and was due to return to the rental car company on October 29, 2022 in Tulsa, Oklahoma.

26. Investigators also identified through the subpoena to Western Union that on October 27, 2022, Welch wired approximately $900 to Ortega.

27. Through the above facts set forth in paragraph 22 through paragraph 26, investigators identified **Raniewicz** was being supplied methamphetamine by Mexican-based DTO member Ortega. Investigators also identified **Raniewicz** was traveling to Phoenix, Arizona to obtain large quantities of methamphetamine to traffic to the NDOK.

28. Through this investigation investigators identified **Raniewicz** would also drive bulk cash loads to Phoenix, Arizona to pay for the methamphetamine. Based on information provided through interviews, investigators believe the money was obtained through the sale of methamphetamine within the NDOK.

29. Through this investigation, members of the TRO have identified this DTO to be a sophisticated Sinaloa-based Mexican DTO. Investigators have identified through cooperating defendants, seized cellular devices, and Facebook search warrants that couriers/distributors such as **Raniewicz** utilize cellular based applications to include but not exclude the following: WhatsApp, Facebook

13

Messenger, Signal Application, and iMessage to communicate in order to avoid law enforcement detection. Through training and experience investigators know obtaining the device utilized to accesses these encrypted applications is the only way to obtain all communication completed. Investigators know that you can serve historical warrants to Facebook however investigators know that data can be deleted previous to the court order and investigators do not obtain those records. Investigators also know that applications such as Signal, iMessage, and WhatsApp do not retain historical data therefore the only way to obtain historical communications of DTO members is via seizure of the devices.

30. Investigators also know it is common practice for sophisticated drug distributors to keep ledgers either electronically or hand written to record or document their transactions as well as, finances.

31. On April 5, 2023, an arrest warrant was issued in the Northern District of Oklahoma for Joseph **Raniewicz** following an indictment by a federal grand jury for having knowingly, intentionally, and willfully conspired, confederated, and agreed, together and with others known and unknown to the Grand Jury, to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846 and 841(b)(1)(A)(viii).

32. On April 10, 2023, United States Magistrate Judge Susan E. Huntsman, Northern District of Oklahoma, authorized an order and application for investigators

14

to obtain cellular GPS locational data on a telephone number associated with **Raniewicz**.

33. On that date investigators began receiving data regarding **Raniewicz'** cellular device. Investigators observed the device to be in the area of East 410 Road and South 4230 Road, Chelsea, Oklahoma, as well as East 430 Road and South 4230 Road, Chelsea, Oklahoma.

34. Through this investigation investigators identified that **Raniewicz** was associated with an address of 12790 South 4230 Road, Chelsea, Oklahoma, located within the Northern District of Oklahoma.

35. On April 14, 2023, at approximately 7:14 a.m., investigators observed GPS locational data on **Raniewicz'** cellular device to indicate approximately 872 meters in the area of East 390 Road and South 4230 Road. Investigators responded to the area of 12790 South 4230 Road.

36. At approximately 8:12 a.m., investigators arrived at 12790 South 4230 Road, and upon arrival observed a male driving a go-cart on the property of 12790 South 4230 Road. Investigators identified the male as **Joseph Anthony Raniewicz**.

37. At approximately 8:14 a.m., investigators observed GPS locational data on **Raniewicz'** cellular device to indicated 872 meters in the area of East 390 Road and South 4230 Road. Based on the meter radius provided by the telephone company, investigators identified 12790 to be in the area of the cellular device at that time. The

above facts corroborate that the cellular device was being held by **Raniewicz** at 12790 South 4230 Road.

38. Since activation of the cellular GPS locational data on **Raniewicz**' cellular device investigators have observed the GPS locational data at night to be in the area of 12790 South 4230 Road, further corroborating the cellular device as well as **Raniewicz** are being housed at 12790 South 4230 Road.

39. Investigators through this investigation have established **Raniewicz**' role within the DTO and have identified **Raniewicz** is responsible for distribution, trafficking, and handling of money. Investigators believe that **Raniewicz** is still in communication with DTO sources of supply, distributors, and money launders. Investigators believe that by searching the property of 12790 South 4230 Road, will provide investigators with further documents, cellular devices, and other items which will assist investigators in obtaining evidence regarding **Raniewicz**' Title 21 violations within the Northern District of Oklahoma. Investigators also believe the aforementioned items will assist in obtaining evidence regarding the Mexican-based Sources of Supply, as well as for DTO members based within the NDOK.

### Conclusion

40. Based on the information above, I submit that there is probable cause to search 12790 South 4230 Road, Rogers County, Northern District of Oklahoma, as further described in Attachment A, and seize the items described in Attachment B.

41. I request to be allowed to share this affidavit and the information obtained

from this search with any government agency, to include state and local agencies

investigating or aiding in the investigation of this case or related matters, and to

disclose those materials as necessary to comply with discovery and disclosure

obligations in any prosecutions from this matter.

Respectfully submitted,

*Alan Frank*

Alan Frank
Special Agent
Drug Enforcement Administration

Subscribed and sworn to by phone on April ___, 2023.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

### Property to be Searched

The property to be searched is a residence located at 12790 South 4230 Road, Chelsea, Rogers County, Northern District of Oklahoma, further described as a single-family dwelling. The residence to be search is identified by Rogers County Assessor's Office as Parcel Number: 23N17E-34-4-00000-000-0000 and Account Number: 660029785. The residence to be searched is identified by latitude: 36.426 and Longitude: -95.474 via Rogers County Assessor's Office. The residence to be searched is located on a 10-acre property located south of Oklahoma Route 28A, north of East 410 Road, and east of South 4230 Road. The residence to be searched has yellow siding with a white trim, and a gray asphalt shingled roof. The property to be searched has a black mail box located directly east of South 4230 Road with the numbers "12790" printed on the side of the mail box. The residence to be searched is more commonly known as **12790 South 4230 Road, Chelsea, Oklahoma**. The residence to be searched is located within the Northern District of Oklahoma.



**LandMarkGSI**
**Rogers County**
Scott Marsh Assessor

12790 s 4230 rd | All

A Z Sort | Filter | Map

660029785
23N17E-34-4-00000-000-0000
PARKER, MICHAEL E &
CHELSEA
12790 S 4230 RD
RURAL - 10.00 ACRES
34-23N-17E
VALUE: 159,489
ASSESSED: 17,100

TAXABLE: 17,100



2



## ATTACHMENT B

### Particular Things to be Seized

All items that constitute evidence, instrumentalities, contraband, and/or fruits of violations of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii) – Drug Conspiracy, including:

a. Documents showing ownership of real or personal property;

b. United States Currency or items reflecting drug proceeds;

c. Books, records, receipts, notes and other papers relating to the trafficking of narcotics even though these documents may be in code or in a different language other than English or in electronically stored data;

d. Contraband, including controlled substances, proceeds of drug sales, records of drug transactions, drug sources, drug customers, and other tangible items evidencing the obtaining, secreting, transfer and/or concealment of assets and/or money obtained through or used in the transportation, distribution, and sale of narcotics, including but not limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any corresponding records of account receivable, money paid or received, drugs supplied or received, cash received to be paid for controlled substances or intended to be paid for controlled substances, whether in paper form or electronically stored data on cellular telephones;

e. Items of personal property tending to establish the existence of a narcotics conspiracy including but not limited to personal telephone bills, photographs and documents and other items reflecting names, addresses, telephone numbers, and communications;

f. Paraphernalia for distributing, packaging and weighing narcotics. Equipment and materials used in the building or using concealed compartments;

g. Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

h. Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

i. Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long-distance calls reflecting domestic and foreign travel;

j. Any and all appointment calendars;

k. Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys,

2

safes, any and all documents relating to banking activities and other
financial transactions including the purchase of real estate and documents
showing ownership of real estate;

l.  Records relating to employment, wages earned and paid and other
compensation records. Records relating to local, state and federal personal
and business income, sales and service taxes, including but not limited to,
computations, notes and records used for tax purposes;

m. Evidence of proceeds including items relating to maintaining, secreting,
gathering or liquidating drug proceeds, particularly: financial records of
withdrawals, funds of transfers, purchases, sales, transfers of assets or
consolidation of assets. Liquid assets or evidence of them including
currency, bank statements, money drafts, letters of credit, money orders,
cashier's checks, pass books, precious metals and jewelry, and documents
relating to safe deposit boxes, stocks, bonds and other financial
instruments;

n.  Evidence of the expenditure of money for the purchase of vehicles or
evidence establishing an ownership interest in vehicles, including
certificates of title, vehicle tag records, photographs and receipts of vehicle
transactions; and

3

o. Cellular telephones, and the electronically stored data therein, for which a separate search warrant will be sought.

4